**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION**

| | | |
|---|---|---|
| GIANLUCA MUEHLBAUER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:24-CV-47 HEA |
| | ) | |
| VANESSA JAMILYN MUELBAUER, | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner's Verified Complaint and Petition for Return of Child under the Hague Convention which was filed against Respondent pursuant to the 1980 Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 9001 *et seq*. Petitioner alleges Respondent removed their child from Switzerland under pretense and that she is unlawfully retaining her in the United States. He seeks an order from the Court directing the child be returned to Switzerland, which he claims is her habitual residence. Respondent opposes returning the child. After consideration of the pleadings, testimony, exhibits, and briefing submitted by the parties, the Court will grant Petitioner's Verified Petition.

**The Hague Convention**

"The Hague Convention 'was adopted in 1980 in response to the problem of international child abductions during domestic disputes.' " *Golan v. Saada*, 596 U.S. 666, 670 (2022) (quoting *Abbott v. Abbott*, 560 U.S. 1, 8 (2010)). The United States of America and Switzerland are both signatories to the Convention. Hague Convention on the Civil Aspects of International Child Abduction, art. 1(a), (b); https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited October 6, 2026). The Hague Convention's goals are twofold: 1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and 2) "to ensure that rights of custody and of access under the law of one Contracting state are effectively respected in the other Contracting States." Hague Convention on the Civil Aspects of International Child Abduction, art. 1(a), (b). The United States Senate ratified the Convention in October 1986 and thereafter enacted ICARA to effectuate the treaty domestically. See 22 U.S.C. §§ 9001–9010.

The treaty and enacting statutes created a four-part merits test. First, a court must determine whether the countries in the dispute, *i.e.*, from where the child was taken and to where they were taken, are signatories. *Abbott*, 560 U.S. at 9. Second, the court must determine the child's habitual residence at the time of the abduction, which determines the applicable law. *Monasky v. Taglieri*, 589 U.S. 68, 77 (2020)

(citation omitted). Third, the court asks whether the person who took the child violated a "right of custody" as defined by the law of the country of the child's habitual residence. *Chafin v. Chafin*, 568 U.S. 165, 168 (2013)(citation omitted). If so, a court must order the return of the child to the country of habitual residence unless one of the enumerated exceptions is proven. See Hague Convention on the Civil Aspects of International Abduction, arts. 12–13; see also 22 U.S.C. § 9003. Petitioner bears the burden of proving by a preponderance of the evidence that S.A.M. was wrongfully removed or retained. 22 U.S.C. § 9003(e)(1)(A).

There are four exceptions to the requirement that a child must promptly be returned to the child's country of habitual residence. Hague Convention on the Civil Aspects of International Abduction, art. 12–13. Relevant here is the exception of grave risk. Courts are not bound to return a child where there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." *Id*. at art. 13(a)–(b). Respondent asserting this defense bears the burden of proving grave risk by clear and convincing evidence. *Leonard v. Lentz*, 297 F. Supp. 3d 874, 890 (N.D. Iowa 2017). A court need not order the return of a child if an exception exists but may use its discretion "to return a child, despite the existence of a defense, if return

would further the aims of the Convention." *Id.,* (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)).

Importantly, it is noted that a Hague Convention case is not a child custody case. "The Hague Convention is not designed to resolve underlying custody disputes, but rather to ensure that such disputes are adjudicated in the appropriate jurisdiction." *Acosta v. Acosta*, 725 F.3d 868, 875 (8th Cir. 2013) (internal citations omitted). "Its 'primary purpose is to restore the *status quo* and deter parents from crossing international borders in search of a more sympathetic court.'" *Id.* (quoting *Nunez-Escudero v. Tice-Menley*, 58 F.3d 374, 376 (8th Cir. 1995)). The Hague Convention is limited to the issue of whether a child should be returned to his or her country of habitual residence to enable the courts of that country to determine issues of custody.

**Procedural Background**

Petitioner, a citizen of Switzerland and the father of minor child S.A.M., filed his Verified Petition on July 11, 2024. (ECF No. 1). Petitioner alleges that in early March 2024, Respondent, a United States citizen, took the minor child to visit her maternal grandparents. Petitioner agreed, subject to return to Switzerland no later than April 16, 2024. Petitioner further alleges Respondent did not return the minor child to Switzerland and has retained her in Missouri since that date

without his consent. Petitioner claims the child's place of habitual residence immediately prior to her removal was Switzerland, and at the time of her removal, Petitioner was exercising his custody rights under Swiss law. Petitioner requests that the Court enter an order returning S.A.M. to Switzerland.

On October 2, 2024, Respondent filed an Answer, in which she denies that the child's habitual residence was Switzerland. (ECF No. 9 at 3, ¶ 10). In her Answer, she also asserts an affirmative defense. Respondent claims that returning the child to Switzerland would present a grave risk of physical and/or psychological harm to S.A.M. or otherwise would place her in danger.

The parties have submitted pre-hearing briefs, witness lists, and exhibit lists. On July 27, 2026 and August 17, 2026, the parties appeared before the Court for evidentiary hearings. Respondent appeared in person. Finding compelling circumstances and for good cause shown, the Court allowed Petitioner to remain in Switzerland and testify by contemporaneous transmission via a Zoom teleconference arranged by the Court. *See* Fed. R. Civ. P. 43(a). Petitioner and Respondent testified under oath, and both parties offered exhibits into evidence. Aside from the parties themselves, no other witness testified. The Court has accepted the deposition transcript of David Finn, Psy.D., who is offered as an expert on behalf of Respondent. After careful consideration of the parties' court

filings and all credible evidence presented, the Court makes the following findings of fact and conclusions of law.

**Findings of Fact**

Petitioner and Respondent were married on August 21, 2019 in Van Nuys, California. S.A.M. was born on January 20, 2020 in Los Angeles, California. In May, 2021, Petitioner, Respondent, and the minor child relocated to Ascona, Switzerland In the spring of 2023, the parties experienced marital difficulties. On June 9, 2023, Respondent brought separation proceedings in the Swiss Court system. On October 16, 2023, the Deputy Praetor of the Locarno-Campagna jurisdiction in the Canton of Ticino entered a Consent Order of Separation. Custody was entrusted to Respondent with the use of the former marital home assigned to Respondent. Petitioner was granted supervised visitation. The Consent Order deprived the parents of the prerogative to travel abroad with the minor child, leaving to the educational curator to make those decisions and who holds the Swiss and American passports of the minor child.

Respondent asked the educational curator and Petitioner if she could take S.A.M. to visit Respondent's parents in Missouri. Respondent advised that her father was ill and the visit may be the last time the minor child would see her grandfather. Petitioner agreed on the condition that the minor child be returned to

Switzerland no later than April 16, 2024. Respondent did not return the minor child for Petitioner's April 17, 2024 visit with her. The minor child remains in Missouri currently.

Prior to the separation, there was an incident where Petitioner and Respondent were in an altercation at a restaurant where, in the presence of the minor child, Petitioner grabbed Respondent and threw her over a table. Additionally, Respondent testified that Petitioner was physically and verbally abusive, through oral conversations and written texts.

On April 18, 2024, Respondent submitted a report of child abuse/neglect to the Missouri Department of Social Services, ("MDSS"). The MDSS concluded there was insufficient evidence to conclude by a preponderance of evidence that the minor child had been abused or neglected. Specifically, in a letter to Petitioner, the MDSS stated:

> There is insufficient evidence to conclude by a preponderance of evidence that [S.A.M.] has/have been abused or neglected because:
>
> [S.A.M.] made no disclosure regarding unknown individuals in any interview with CD nor in her forensic interview at Rainbow House. [S.A.M.] disclosed during interviews with CD and during her forensic interview that Papa is mean, she's scared of Papa and Papa hurt Mama. [S.A.M.] did not disclose any details regarding incidents. At this time there is not enough evidence to substantiate this allegation. [S.A.M.] disclosed ·papa hurt my butt with his pp· to CO during a second interview after mother reported she was openly disclosing details. [S.A.M.] completed a forensic interview where minimal disclosure was made regarding 'Papa hurt my butt with his

> pp·. When using anatomical drawings, she was not consistent with identifying body parts with her disclosure. [S.A.M.] was unable to provide a narrative of the incident with her disclosure having minimal details that were not consistent. [S.A.M.]·s detailed disclosures are made to her mother. At this time there is not enough evidence to substantiate this allegation.

The identical statements were made by S.A.M. to Dr. Finn, Respondent's retained expert. Dr. Finn interviewed S.A.M. on November 9, 2024. At the time of the interview S.A.M was approximately 4 and three-quarter years old. At the time of the hearings S.A.M was approximately six and one-half years old. In his report, Dr. Finn states, "During my interview, the child disclosed abuse to me making a number of statements that describe or strongly allude to physical, sexual and psychological abuse." Further, he states that S.A.M. told him her "papa throw my mama over a table," and that "Papa hurt me in my butt" and "hurt me with his pee pee." Dr. Finn stated that the minor child put her hands on her vagina when she made the statement. Dr. Finn testified that S.A.M. picked up a brown crayon when he asked her what a "pee pee" looked like. Dr. Finn concluded that the allegations were truthful based on his interview with the minor child, her pointing to the crayon, and placement of her hands. Dr. Finn did not meet with Petitioner.

The parties did not present the minor child at her tender age for an *in camera* interview by the Court.

## Conclusions of Law

The United States Congress implemented the Hague Convention through ICARA. 22 U.S.C. §§ 9001 *et seq*. ICARA permits a parent seeking relief under the Hague Convention to file a petition in federal court for return of a child under the age of 16. *Golan*, 596 U.S. at 671. "Under ICARA, the party petitioning for the child's return bears the burden of establishing by a preponderance of the evidence that the child was wrongfully removed or retained." *Id.* at 671–72 (citing § 9003(e)(1)).

To establish a *prima facie* case for return of a child, a petitioner must show that: "(1) immediately prior to removal or retention, the child habitually resided in another Contracting State; (2) the removal or retention was in breach of the petitioner's custody rights under the State's law; and (3) the petitioner was exercising those custody rights at the time of the removal or wrongful retention." *Custodio v. Samillan*, 842 F.3d 1084, 1088 (8th Cir. 2016) (quotations omitted). If a petitioner establishes a *prima facie* case, the child must be "promptly returned unless one of the narrow exceptions set forth in the [Hague] Convention applies." *Id.* at 1089. "Absent a finding that an exception applies, a child determined to be wrongfully removed or retained must be 'promptly returned' to the child's country of habitual residence." *Golan*, 596 U.S. at 672 (quoting 22 U.S.C. § 9001(a)(4)).

**Petitioner's *Prima Facie* Case for Return**

Petitioner argues that he has satisfied all three elements of a *prima facie* case for return under the Hague Convention because he demonstrated that: (1) Switzerland was S.A.M.'s country of habitual residence immediately prior to her removal; (2) the removal of the child to the United States breached his custody rights; and (3) he was exercising those custody rights at the time of their removal.

Respondent offered no evidence to dispute the fact that Petitioner has visitation rights under their agreement and was exercising those rights at the time she removed the child from Switzerland to the United States. It is undisputed that Petitioner is the minor child's father, and that the parties entered into a consent settlement regarding the child. Further, while in Switzerland, the family was living together in one residence and the Swiss Court granted use of the marital home to Respondent. It is also undisputed that Respondent was required to obtain the permission of the educational curator to take the minor child abroad. Petitioner only consented to the child's removal from Switzerland based on the representation of Respondent that she would be returned in time for Petitioner's visitation. Neither the educational curator nor Petitioner ever consented to the minor child remaining in the United States. In short, the second and third elements of the *prima facie* case are not in dispute.

As for the children's habitual residence, Respondent testified that the couple lived a "nomad" life and traveled around Europe. She would not definitively answer questions regarding where she considered her residence after leaving California and moving to Switzerland. It is undisputed, however, that the separation proceedings were commenced and remained in Switzerland. The agreement gave Respondent use of the marital home, which was in Switzerland. The conditions of the custody arrangement and visitation by Petitioner took place in Switzerland. Petitioner obtained an order of protection from the Swiss courts.

Although the minor child has now been in Missouri for over two years, the issue before the Court is not what is the child's current residence, but rather where she habitually resided *immediately prior* to her removal from Switzerland in May 2024. *Custodio*, 842 F.3d at 1088.

The term habitual residence is not defined by the Hague Convention. The Supreme Court has instructed that "a child resides where he or she lives," and "residence in a particular country can be deemed 'habitual,' [ ] only when [the child's] resident there is more than transitory." *Monasky*, 589 U.S. at 76. The term refers to the place where the child has "some degree of integration . . . in a social and family environment" and "the place where a child is at home, at the time of removal or retention . . ." *Id.* The determination of a child's habitual residence is a

“fact-driven inquiry” and “depends on the totality of the circumstances specific to the case.” *Id.* at 71, 78.

The intention of the parents is also one of the relevant factors to consider, but “[n]o single fact ... is dispositive across all cases.” *Id.* at 79.

“Determining habitual residence is a mixed question of fact and law.” *642 *Tsuruta v. Tsuruta*, 76 F.4th 1107, 1111 (8th Cir. 2023). Once the district court determines the totality-of-the-circumstances legal standard applies, it becomes a “fact-driven inquiry” requiring a court consider more than “domicile and nationality.” *Monasky*, 589 U.S. at 78, 84. The relevant factors include the place the child considers home, the length of time a child has resided in the location, the degree of the child's integration, and the intention of the caregivers on where the family will reside. *Id*. at 77–78. In making this determination, “courts must be sensitive to the unique circumstances of the case and informed by common sense.” *Id*. at 78, 140 S.Ct. 719. (citation omitted).

The Court finds that Petitioner has established that Switzerland was the habitual residence of S.A.M. immediately prior to her removal from Switzerland. Prior to her removal, S.A.M. had been living in Switzerland since shortly after her birth, mostly the entirety of her life at the time of removal.

Based on the totality of the circumstances, the Court finds that Petitioner has established by a preponderance of the evidence that at the time of her removal, S.A.M.'s habitual residence was in Switzerland, not in the United States or any other country. *See, e.g.*, *Cohen v. Cohen*, 858 F.3d 1150, 1154 (8th Cir. 2017) (finding the United States to be a child's habitual residence and reasoning that he had lived there for almost two years, attended school and speech-therapy classes, had friends and extended family, and his mother had obtained employment, purchased a vehicle, and rented an apartment there); *Guzzo v. Hansen*, No. 4:22-CV-15 PLC, 2022 WL 3081159, at *5 (E.D. Mo. Aug. 3, 2022), *aff'd,* No. 22-2972, 2023 WL 8433557 (8th Cir. Dec. 5, 2023) (finding Spain was the habitual residence of a child despite evidence that the child regularly visited the United States, maintained significant family relationships in the United States, and had stronger English than Spanish skills; reasoning that the child had "lived in Spain for five years (or half of his life), spoke Spanish, and attended school, participated in extracurricular activities, socialized with friends, and had a pediatrician in Spain.").

In sum, the Court finds Petitioner has established all elements of his *prima facie* case by the preponderance of the evidence. The burden thus shifts to

Respondent to establish an affirmative defense to S.A.M.'s prompt return to Switzerland.

**Respondent's Affirmative Defenses**

*Grave risk of harm*

In opposing removal, Respondent contends that returning S.A.M. to Switzerland would expose her to a grave risk of physical or psychological harm. More specifically, she argues returning the child would cause harm because: (1) Petitioner has abused the minor child in the past by subjecting her to seeing her mother physically and verbally abused; (2) Petitioner has sexually abused the minor child; and (3) Petitioner has anger management issues and a past history of domestic violence.

Regarding the claims of sexual abuse, there is not clear and convincing evidence in the record to establish risk to S.A.M that any abuse will occur if she is returned to Switzerland. She was not presented to the Court for an interview and there is conflicting evidence that the single alleged incident of sexual abuse occurred.

Article 13b of the Hague Convention "does not require return if a respondent establishes by 'clear and convincing evidence,' … that 'there is a grave risk that the child's return would expose the child to physical or psychological harm or

otherwise place the child[ren] in an intolerable situation.'" *Acosta v. Acosta*, 725 F.3d 868, 875 (8th Cir. 2013) (quoting Hague Convention art. 13b; 42 U.S.C. § 11603(e)(2)(A)). In other words, Respondent must show "that a grave risk is highly probable." *Rodriguez v. Molina*, 96 F.4th 1079, 183 (8th Cir. 2024) (quotation omitted).

The Eighth Circuit has recognized that a grave risk of harm may exist in cases involving serious abuse or neglect. *Acosta*, 725 F.3d at 875. In examining whether the defense applies, "[d]istrict courts must engage in a fact-intensive inquiry to determine whether the respondent has proved a grave risk of harm, which requires careful consideration of several factors, including the nature and frequency of the abuse and the likelihood of its recurrence." *Vasquez v. Colores*, 648 F.3d 648, 650 (8th Cir. 2011) (citing *Silverman v. Silverman*, 338 F.3d 886, 900 (8th Cir. 2003)). "[I]n order to apply the Article 13(b) exception, the court would need to cite specific evidence of potential harm to the individual children." *Silverman*, 338 F.3d at 900. "[T]he potential harm must be severe, and there must be a probability that the harm will materialize." *Guzzo*, 2022 WL 3081159, at *7 (quoting *Ermini v. Vittori*, 758 F.3d 153 (2d Cir. 2014) (internal quotation marks omitted)). *See also Babcock v. Babcock*, 503 F. Supp. 3d 862, 882 (S.D. Iowa 2020) (noting that "the harm must be a great deal more than minimal" and that

"[n]ot any harm will do nor may the level of risk of harm be low") (quoting *Walsh v. Walsh*, 221 F.3d 204, 218 (1st Cir. 2000)).

In this case, Respondent testified that during the marriage, Petitioner shoved her and pushed her over a table in a restaurant in front of the minor child. He has berated her in front of S.A.M. Very shortly after Respondent took S.A.M. to the United States, Respondent made an allegation against Petitioner with the MDSS that S.A.M. made statements which indicated Petitioner sexually abused her. The MDSS concluded there was insufficient evidence of abuse. Dr. Finn, Respondent's hired expert, arrived at the opposite conclusion. Respondent offered no other evidence of physical abuse that Petitioner directed towards S.A.M. While the Court credits Respondent's testimony regarding Petitioner's past conduct toward her, the Court is unable to credit, as clear and convincing evidence, her allegations regarding S.A.M.'s statements given to the MDSS and Dr. Finn.

With regard to Respondent's allegations that S.A.M. was subjected to seeing and hearing the abuse of Respondent, the likelihood of a danger to S.A,M. recurring is extremely low since the parties no longer live together and S.A.M. can be shielded from any conversations between the parties. Regarding claims that Petitioner abused or can abuse S.A.M. if returned, the Swiss Court has jurisdiction over the custody issues of the minor child. Indeed, the Swiss Court instituted

restrictions on Petitioner's visitation of S.A.M. though providing for supervised visitation and an order of protection with regard to Respondent. The Court does not condone Petitioner's past conduct but finds that the risk to S.A.M. is extremely low. It does not rise to a level of severity such that it presents a grave risk of harm. The grave risk defense is a narrow exception, and the psychological abuse Respondent describes here does not rise to a degree of such magnitude to amount to serious abuse. Respondent has not established by clear and convincing evidence that the child will face a grave risk of psychological harm based on Petitioner prior conduct toward Respondent. *See, e.g., Foster*, 654 F. Supp. 2d at 361 (although father was found to be domineering, excessively demanding, egocentric, lacking in sensitivity, and impatient, the respondent has failed to demonstrate grave risk of psychological harm).

The Court has considered all credible evidence of Petitioner's conduct in this case, including the conduct that dates back to when the parties cohabitated, and finds it does not rise to a level of severity for the grave risk defense to apply. The grave risk defense is a narrow exception to the right of return, and while Petitioner's conduct ranges from concerning to repugnant and is likely to be scrutinized and taken into account in any future custody disputes, evaluating the evidence of Petitioner's conduct in its totality, the Court concludes Respondent has

failed to show by clear and convincing evidence that there is a grave risk that S.A.M.'s return would expose her to physical or psychological harm or otherwise place the child in an intolerable situation. *Rodriguez*, 96 F.4th at 1084; *Acosta*, 725 F.3d at 876. The grave risk defense does not apply in this case.

**Fundamental Principles of Human Rights and Protection of Children**

Respondent raises an Article 20 argument as a defense. Petitioner alleges that returning the child to Switzerland would be inconsistent with United States fundamental principles of human rights and fundamental freedoms under Article 20 of the Hague Convention. Respondent must prove this allegation by clear and convincing evidence in order to establish the exception. ICARA § 9003(e)(2)(A).

> Article 20 is to be "restrictively interpreted and applied." 51 Fed. Reg. at 10510 (quoting Elisa Pérez-Vera, Explanatory Report, in 3 ACTES ET DOCUMENTS DE LA QUATORZIÈME SESSION: CHILD ABDUCTION 426, 462 (Permanent Bureau trans., 1982) (ACTES ET DOCUMENTS)). It "is not to be used ... as a vehicle for litigating custody on the merits or for passing judgment on the political system of the country from which the child was removed." *Id.*

*Galaviz v. Reyes*, 95 F.4th 246, 254 (5th Cir. 2024).

The Court's findings do not establish an Article 20 exception. Neither the parties nor the district court point to laws of the United States that would prohibit the return of a child to another country if the child was present during altercations between the parents nor of questionable allegations of sexual abuse. Respondent

did not present clear and convincing evidence demonstrating that, as a matter of law, the return of the child would utterly shock the conscience or offend all notions of due process. *Id*

**Conclusion**

For the reasons stated above, the Court finds that Petitioner has established a *prima facie* case for return of S.A.M. to Switzerland. The Court further finds that Respondent has not proven that there is an affirmative defense preventing the return.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Verified Complaint and Petition for Return of Child Under the Hague Convention is **GRANTED**. [ECF No. 1]

A separate Order Directing Return of Minor Children to Country of Habitual Residence will accompany this Opinion, Memorandum and Order.

Dated this 9th day of October, 2026.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE